BARFIELD, Judge.
Appellant, an inmate in the state prison system, seeks review of an order of the Division of Administrative Hearings finding Rule 33-6.006(1), Florida Administra *42 tive Code[1] to be a valid exercise of delegated legislative authority. Under the doctrine of Key Haven Associated Enterprises, Inc. v. Board of Trustees of the Internal Improvement Trust Fund, 427 So.2d 153 (Fla.1982), appellant seeks a determination from this court as to the constitutionality of section 945.10(2), Florida Statutes (1985),[2] the statutory authority for the challenged rule. Agreeing with appellant, we find section 945.10(2) to be unconstitutional.
Appellant requested the Department provide him copies of various documents maintained by the Department. His request was denied under Rule 33-6.006 and section 945.10. Appellant then filed a petition under section 120.56, Florida Statutes, contending the rule was an invalid exercise of delegated legislative authority and that it was arbitrary and capricious. Taking the position that section 945.10 was intended only to deny inmates confidential information in the department’s files, appellant contended the rule was not reasonably related to the purpose of section 945.10.
The hearing officer found that the appellant had sufficiently alleged standing to challenge subsection (1) of Rule 33-6.006. However, the hearing officer found that the rule was not an invalid exercise of delegated legislative authority as it did not in any way depart from the statutory mandate.
Under the reasoning of Turner v. Safley, — U.S.-, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)[3], we find no rational basis for totally denying inmates access to information in the files of the Department of Corrections, as provided under section 945.10(2), Florida Statutes. We can discern no reasonable connection between the statute’s policy of nondisclosure of information to inmates and the Department’s purposes of incarceration of inmates and of security at state correctional facilities. While there are legitimate security concerns as to some information found in Departmental files, such as maintaining security and protecting the identity of prison informants, such concerns can be met without a blanket denial of access.[4] As well, privacy interests of *43 inmates and departmental employees may need to be protected by limiting disclosure of certain information. But denying appellant the type of information he seeks here is beyond the legitimate concerns of the Department and the state. However, this is not to suggest that the Department may not establish procedures under which inmates may be given access to or copies of information in Departmental files.
Section 945.10(2) also unconstitutionally creates three classes of people in regards to access to information held by the Department. First, inmates and those who may disclose information to inmates, such as attorneys of inmates, are denied all access to Departmental files.[5] Second, those who do not disclose information to inmates are allowed full access to Departmental files under the statute, except to the extent the information is confidential. Third, the statute gives members of the press unfettered access to nonconfidential information, regardless of whether they may disclose the information to inmates directly or indirectly via publication. There is no logical basis for this classification where the information in the hands of the press and the public is deemed harmless to the legitimate concerns of the Department but the same information in the hands of inmates is presumed harmful. The statute serves no purpose but to deny inmates access to information they have an interest and a right in seeing, particularly as it may affect their interests.
Accordingly, we declare section 945.10(2), Florida Statutes (1985), to be unconstitutional. The case is remanded to the DO AH hearing officer for further proceedings to determine the validity of Rule 33-6.006(1) in light of this opinion.
ERVIN and JOANOS, JJ., concur.

. "No inmate of any institution, facility or program shall have access to any information contained in the files of the Department.”

. “No inmate of any institution, facility, or a program of the Department of Corrections shall have access to any information contained in the files of the department. The department shall restrict release of information to any person except members of the news media and those listed in subsection (1) when there is reasonable cause to believe that such person may divulge such information to the inmate.”

. The Supreme Court set forth four factors, which were not exclusive, that a court should consider in evaluating the constitutionality of prison regulations. Applying a rational relationship test, the court is to look to see if the regulation bears a rational connection to the legitimate governmental interest put forth to justify it. Second, the court should determine if there are available other alternative means of exercising the asserted right. Third, the impact of accommodating the asserted right on the interests of inmates, prison personnel and prison resources generally must be considered. Fourth, a reviewing court should consider the absence of ready alternatives as a measure of the reasonableness of a prison regulation. Applying this test in Turner, the Court found that a Missouri regulation barring inmate-to-inmate correspondence was reasonably related to legitimate prison security concerns. Such communications between inmates could be a spur to criminal behavior, particularly in light of the prison gang problem in Missouri. Allowing such correspondence rights could be done only at the cost of significantly less liberty and safety for everyone else in the prisons due to increased security concerns. There were no obvious easy alternatives to the mail regulation, with item by item censorship more than a de minimis cost. The rule was content-neutral, logically advanced goals of institutional security and was not an exaggerated response to those objectives. The court went on to find a regulation barring inmate marriages except with approval of the prison warden was not reasonably related to legitimate penological objectives. The regulation was an exaggerated response to security concerns, leaving no easy alternatives to the regulation that would accommodate the right to marry while imposing a de minimis burden on the pursuit of security objectives.

.Section 945.10(1), Florida Statutes, which is not challenged here, provides that the Department "shall promulgate rules and regulations stating what portions of its files are considered confidential ... [and] to prevent the disclosure of confidential information to unauthorized parties. ..." This would allow the Department to restrict access to information that is truly confidential and deserving of nondisclosure to inmates and to the public in general.

. In Florida Institutional Legal Services, Inc. v. Florida Dept, of Corrections, 50 Fla.Supp. 97 (Fla. 2d Cir.Ct.1980), (authored by then-Circuit Judge Joanos), section 945.10(2) was held to be an unconstitutional denial of equal protection under Art. I, § 2 of the Florida Constitution as it denied staff attorneys representing inmates access to Department of Corrections’ business records. The logic of that case extends to the instant situation.